IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-cv-22069-DPG

ROBERT A. SCHREIBER and WINIFRED
C. BURNFIELD, individually and
on behalf of all others similarly situated,

       Plaintiffs,

vs.

ALLY FINANCIAL INC.,
a Delaware corporation, d/b/a ALLY BANK,
f/k/a GMAC, INC..

       Defendant.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Robert A. Schreiber and Winifred C. Burnfield, individually and on behalf of all others similarly situated, through undersigned counsel, file this Class Action Complaint against Defendant, Ally Financial Inc., a Delaware corporation, and allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

### INTRODUCTION

1.    This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Plaintiffs individually and others similarly situated who leased a vehicle through Ally, later purchased the vehicle pursuant to the lease contract, and were charged fees in connection with the vehicle purchase that were never disclosed by Ally in the lease contract.

2.    According to Ally's financial reports, Ally originates over $10 billion in automobile leases in the United States per year, with hundreds of thousands of lessees. All of

Ally's leases are executed pursuant to a standardized form contract that Ally calls the "SmartLease" agreement. The SmartLease agreement provides that the lessee has the option of purchasing the vehicle at the end of the lease term for a set price, plus official fees and taxes, which the agreement defines as governmental fees, such as license, title, registration, testing and inspection fees. At the end of the lease term, however, Ally refuses to sell the vehicle to its lessees for the set price listed on the SmartLease agreement. Instead, its lessees are forced to purchase the vehicle through a dealer for a higher price, which is inflated due to the inclusion of additional fees that were never disclosed in the SmartLease agreement.

3.     As a result, Plaintiffs, and each Class Member, have been damaged in the amount of the undisclosed fees that are added to the purchase option price listed in the SmartLease agreement. In Plaintiff Schreiber's case, Mr. Schreiber was charged a previously undisclosed pre-delivery service fee of $799.99 and a documentation fee of $100. Likewise, Ms. Burnfield was charged a previously undisclosed documentary fee of $250.

4.     On behalf of themselves and the proposed class, Plaintiffs assert two claims: (a) violation of the federal statutory Consumer Leasing Act ("CLA"); and (b) breach of contract. Plaintiffs, on behalf of themselves and the proposed class, seek statutory damages, actual monetary damages, and injunctive relief.

## PARTIES

5.     At all times material to the allegations set forth herein, Plaintiff Robert A. Schreiber was and is an individual over the age of 21 residing in Miami-Dade County, Florida, within the Southern District of Florida.

6.     At all material times to the allegations set forth herein, Plaintiff Winifred C. Burnfield was and is an individual over the age of 21 residing in Warren, Ohio.

7.      At all times material to the allegations set forth herein, Ally (formerly GMAC, Inc.) was and is a Delaware financial services corporation. Defendant directed its business activities, including the financing of auto leases, to residents of the State of Florida, including within the Southern District of Florida, from which it has derived pecuniary gain. Defendant's principal place of business is located at 200 Renaissance Center, Detroit, Michigan, 48265.

### JURISDICTION AND VENUE

8.      This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.      This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this action is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and certain members of the Class are citizens of a State different from Ally. This Court also has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff's Consumer Leasing Act claim arises under the laws of the United States, and this Court has supplemental jurisdiction over Plaintiff's breach of contract claim.

10.     Venue is proper pursuant to Chapter 28 U.S.C. § 1391(a) because a substantial part of the acts and omissions giving rise to the claims occurred, and the property that is the subject of the action is situated, in this District.

11.     This Court may exercise personal jurisdiction over Ally pursuant to § 48.193, Fla. Stat., because this action arises out of Ally, personally or through an agent, operating, conducting, engaging in, or carrying out a business or business venture in this State. Further, this Court may exercise personal jurisdiction over Ally because Ally, personally or through an agent, breached a contract within this State. And this Court may further exercise personal jurisdiction

over Ally because Ally, personally or through an agent, engaged in substantial and not isolated activity in the State.

## SUBSTANTIVE ALLEGATIONS

12.     Ally was the fourth largest vehicle lessor in the United States during 2013, originating over $10 billion in automobile leases in 2013 alone.

13.     Ally has distributed blank copies of its SmartLease agreement to over 16,000 car dealerships throughout the country.  These dealerships independently enter into lease agreements for new vehicles with consumers, using Ally's SmartLease agreement standardized form.  Ally then purchases these leases and the vehicles from the dealerships, who check a box on the SmartLease agreement indicating that they are assigning the lease and selling the vehicle to Ally. Ally generates revenue from lease payments and fees paid by consumers, and also recognizes a gain on the resale of the vehicle at the end of the lease.

### Mr. Schreiber's Lease

14.     Wesley G. Reid entered into a two-year SmartLease agreement with Miami Lakes CJ LLC on February 27, 2012, for a new 2012 Dodge Challenger.  A copy of the agreement is attached to the Complaint as Exhibit A.  At the top of the agreement, Miami Lakes CJ LLC checked a box indicating that it "will assign this lease and sell the vehicle to Ally Bank."

15.     On November 15, 2012, Mr. Reid assigned the SmartLease agreement to Mr. Schreiber, and Mr. Schreiber accepted the assignment, by executing the Transfer of Lease Obligation document attached to the Complaint as Exhibit B.

16.     On November 19, 2012, Ally approved the assignment from Mr. Reid to Mr. Schreiber by signing the Transfer of Lease Obligation document and sending Mr. Schreiber a letter stating that the "lease transfer is now complete."

4

17.     As of November 19, 2012, therefore, Mr. Schreiber and Ally were the two parties to the SmartLease agreement.

18.     Section 9 of the SmartLease agreement is titled "**Purchase Option at End of Lease Term.**"  It provides that "You have an option to buy the vehicle at the end of the lease term for $25,889.70, plus official fees and taxes."

19.     Section 13 defines "**OFFICIAL FEES AND TAXES.**"  It provides that "You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes).  We may bill you separately for official fees and taxes."

20.     Paragraphs 31 and 33 also addresses the purchase option, providing:

**OPTION TO BUY THE VEHICLE.**  You have an option to buy the vehicle only at scheduled lease end.  See the front for the price. You must also pay any related official fees and taxes.

and

**WHAT YOU OWE AT SCHEDULED END.**  (a) IF YOU BUY THE VEHICLE:  If you have paid us and kept your agreements, you will owe us nothing more.

21.     The contract also includes an integration clause, providing that "**THIS IS THE ENTIRE AGREEMENT**.  This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle.  Any change to the terms of this lease must be in writing and signed by you and us. No oral changes are binding."

22.     In February 2014, Mr. Schreiber communicated to Ally in writing and via telephone that he wished to exercise the purchase option on the lease, as the lease was scheduled to terminate on February 26, 2014.  Ally responded that it would not sell the vehicle to Mr. Schreiber for $25,889.70, plus official fees and taxes, notwithstanding its obligation to do so

under Section 9 of the SmartLease Agreement. Ally directed Mr. Schreiber to purchase the vehicle through Miami Lakes CJ LLC, even though Mr. Schreiber informed Ally that Miami Lakes CJ LLC refused to sell the vehicle to Plaintiff for $25,889.70 plus official fees and taxes, and instead demanded that Plaintiff pay an additional $1,288.99 for a dealer fee, document preparation, and other charges that were never disclosed in the SmartLease Agreement.

23.     Unable to purchase the vehicle from Ally, Mr. Schreiber returned to Miami Lakes CJ LLC to purchase the vehicle. On March 23, 2014, Mr. Schreiber purchased the vehicle from Miami Lakes CJ LLC. Miami Lakes CJ LLC charged Mr. Schreiber $25,389.70 as the cash price for the vehicle, a $799.99 pre-delivery service fee, and a $100 documentation fee, in addition to various other governmental fees and taxes. Thus, to purchase the vehicle, Mr. Schreiber was forced to pay $26,289.69 plus official taxes and fees, which was $399.99 more than the purchase option price listed in Section 9 of the SmartLease agreement. The pre-delivery service fee and documentation fees were never disclosed on the SmartLease agreement.

**Ms. Burnfield's Lease**

24.     Ms. Burnfield entered into a SmartLease Agreement to lease a 2010 Cadillac SRX in 2009. A copy of the relevant portions of Ms. Burnfield's SmartLease Agreement are attached hereto as Exhibit C.

25.     At the top of the agreement, a box is checked indicating that the Lessor "will assign this lease and sell the vehicle to GMAC," which was Ally's predecessor.

26.     As of July 25, 2012, therefore, Ms. Burnfield and Ally were the two parties to the SmartLease agreement.

27.    Section 9 of the SmartLease agreement is titled "**Purchase Option at End of Lease Term**." It provides that "You have an option to buy the vehicle at the end of the lease term for $21,367.50 plus official fees and taxes."

28.    Section 13 defines "**OFFICIAL FEES AND TAXES**." It provides that "You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We may bill you separately for official fees and taxes."

29.    In July 2012, Ms. Burnfield sought to purchase the Cadillac SRX, pursuant to the purchase option provided in her SmartLease. Mr. Burnfield went to Cole Valley Motor Company, a dealership in Warren, Ohio, to complete the transaction. Cole Valley Motor charged Ms. Burnfield $21,221.44 as the cash price for the vehicle, and a $250 Documentary Fee, in addition to various governmental fees and taxes. Thus, to purchase the vehicle, Ms. Burnfield was required to pay $21,471.44, plus official taxes and fees, which was $103.94 more than the purchase option price listed in Section 9 of the SmartLease agreement. The Documentary Fee was never disclosed on the SmartLease agreement.

30.    Ally has engaged in the same, uniform unlawful conduct with respect to the entire Class. Ally is aware that dealers insist on charging consumers additional fees when selling leased vehicles to them at the end of leases, because it is a common industry practice known to industry professionals and participants, and consumers, like Plaintiffs, have informed it of this practice. When Ally drafted the SmartLease agreement, which is Ally's copyrighted product, it knew that consumers would not be able to purchase its vehicles at the end of the lease for the purchase option price stated in the SmartLease agreement.

## CLASS REPRESENTATION ALLEGATIONS

31.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.   The class Plaintiffs propose to represent is defined as follows:

> All persons who, since June 4, 2008, leased a motor vehicle pursuant to a SmartLease Agreement that was assigned to Ally Financial Inc. or Ally Bank, later purchased the vehicle at the end of the lease term pursuant to the lease contract, and were required to pay fees that were not disclosed in the SmartLease Agreement when purchasing the vehicle (the "Class").

Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, their directors and officers, and members of their immediate families.   Also excluded from the Class are the Court, the spouse or partner of the Court, if applicable, all persons within the third degree of relationship to the Court and its spouse or partner, and the spouses of all such persons.

32.     The prerequisites to class representation pursuant to Rule 23(a) are present in this action as follows:

A.     **Numerosity**. The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable.   While the exact number and identities of members of the Class are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe and therefore aver that there are tens of thousands of Class members in the State of Florida and throughout the United States.

B.     **Commonality**: There are questions of fact and law common to the claims of Plaintiffs and the members of the Class that predominate over any questions affecting any individual members including, among others, the following questions:

1.     Whether Ally failed to disclose the additional fees that are added to the purchase price of its leased vehicles at the end of its leases;

2.      Whether Ally breached its lease contracts by refusing to sell the vehicles to consumers and instead forcing them to purchase the vehicles from dealers, knowing that the dealers would impose additional fees not disclosed in the lease agreements; and

3.      Whether Ally's failure to disclose, in the lease documents, the additional dealer fees constitutes a violation of the federal Consumer Leasing Act.

C.      **Typicality**.  Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs allege a common course of conduct by Defendant towards members of the Class.  Plaintiffs, like other members of the respective Class, formed a lease contract with Defendant and then purchased the leased vehicle at the conclusion of the lease term while being charged a previously undisclosed "dealer fee" that was not an official fee or a tax. Plaintiffs and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiffs' claims and those of the respective Class.

D.      **Adequacy**:  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

33.    Plaintiffs bring this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issues in this action are whether Defendant has, in a uniform manner, failed to disclose to members of the Class the additional dealer fees that are added to the purchase price of vehicles at the end of its leases, and

whether this conduct violates the Consumer Leasing Act and constitutes a breach of its lease agreements.

34.     The expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by this Court.  Certification under Rule 23 of the Federal Rules of Civil Procedure is, therefore, appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION –**
**VIOLATION OF FEDERAL CONSUMER LEASING ACT (15 U.S.C. § 1667, *et seq.*)**
**(ASSERTED BY PLAINTIFF SCHREIBER)**

35.     Plaintiff, Mr. Schreiber, hereby adopts and incorporates by reference paragraphs 1 to 34 as if fully set forth herein.

36.     Ally is a lessor under 15 U.S.C. § 1667(3), because it is regularly engaged in leasing, offering to lease, and arranging to lease under consumer leases.

37.     Plaintiff's SmartLease agreement with Ally is governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4.

38.     Ally violated 15 U.S.C. § 1667a and 12 C.F.R. § 213.4 by, among other things:

    a.   failing to disclose that Plaintiff would be required to purchase the vehicle from the original dealer, not Defendant; and

    b.   failing to disclose that Plaintiff would be required to pay additional fees to the dealer, including the pre-delivery service fee and documentation fee, upon purchasing the vehicle.

39.    These omissions were material to Plaintiff's decision to enter into the lease, and Plaintiff detrimentally relied on these material omissions. If the full extent of the additional fees that Plaintiff would be forced to pay to purchase the vehicle had been properly disclosed before he entered into the lease, he would have either negotiated a better lease or elected not to enter into the lease agreement.

40.    Ally's violation of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4 was the actual and proximate cause of damages suffered by Plaintiff and the Class. Plaintiff, in particular, suffered $399.99 in actual damages.

41.    Pursuant to 15 U.S.C. § 1640, Plaintiff and the Class are entitled to recover their actual damages and statutory damages from Ally.

**SECOND CAUSE OF ACTION –
BREACH OF CONTRACT
(ASSERTED BY PLAINTIFFS SCHREIBER AND BURNFIELD)**

42.    Plaintiffs hereby adopt and incorporates by reference paragraphs 1 to 34 as if fully set forth herein.

43.    Plaintiff Schreiber formed a valid, binding contract with Ally when Plaintiff accepted the assignment of the SmartLease agreement from Mr. Reid and Ally approved the assignment.

44.     Plaintiff Burnfield formed a valid, binding contract with Ally when Plaintiff entered the SmartLease Agreement that was assigned to Ally's predecessor, GMAC.

45.     Plaintiffs have performed all, or substantially all, of the obligations imposed on them under the contracts.

46.     Ally materially breached the contracts by refusing to sell the vehicles at the price stated in the contracts, and requiring Plaintiffs to purchase the vehicles from a dealer for a price higher than the price stated in the contracts.

47.     Ally's breach of the contracts was the actual and proximate cause of damages suffered by Plaintiffs and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.     An order certifying the Class under the appropriate provisions of Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their legal counsel to represent the Class;

B.     Damages as provided by law;

C.     Pre-judgment and post-judgment interest to the Class, as allowed by law;

D.     Reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class;

E.     Injunctive relief requiring Defendant to honor its obligation under its lease agreements to sell the leased vehicles for the price identified on the lease agreements; and

F.     Such other and further relief as is just and proper.

### JURY DEMAND

Plaintiffs, individually and on behalf of all members of the proposed Class, hereby demand a trial by jury on all issues so triable.

DATED this 29th day of December, 2016    Respectfully Submitted,

**PODHURST ORSECK, P.A.**

/s/ Peter Prieto
Peter Prieto
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante III
Florida Bar No. 617113
jgravante@podhurst.com
Matthew Weinshall
Florida Bar No. 84783
mweinshall@podhurst.com
Alissa Del Riego
Florida Bar No. 99742
adelriego@podhurst.com
SunTrust International Center
One S.E. 3rd Ave, Suite 2700
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382

**BARON & BUDD, P.C.**
Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Jonas P. Mann (SBN 263314)
jmann@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818)839-2333
Facsimile: (818)986-9698

***Counsel for Plaintiffs***

GMAC SMARTLEASE AGREEMENT — Single Payment

| LESSEE (and CO-LESSEE) ("Your") name and address, including county | Garaging address (if different) | LESSOR (Retailer) |
|---|---|---|
| WESLEY GRAHAM REID | Principal driver (if business use) | Miami Lakes CJ LLC |
| 4220 S DOUGLAS RD | | 16600 NW 57TH AVENUE |
| COCONUT GROVE, MIAMI-DADE, FL 33133 | | MIAMI, FL          33014 |

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back.
"We," "us," and "our" refer to Lessor named above and any assignee. An "assignee" is a person to whom this lease is assigned (if it is assigned).
☐ If this box is checked, Lessor (Retailer) will assign this lease and sell the vehicle to GMAC.          ALLY BANK
☒ If this box is checked, Lessor (Retailer) will assign this lease and sell the vehicle to GMAC.
☐ If this box is checked, Lessor (Retailer) intends not to assign this lease.

## THE VEHICLE YOU ARE LEASING

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use |
|---|---|---|---|---|---|---|
| NEW | 2012 DODGE | CHALLENGER | | 2C3CDYBT5CH174187 | 78 | ☒Personal, Family, or Household  ☐Commercial, Business, or Agricultural |
| Dealer Installed Options: | | | | | | GVW (if truck)   ☐Public Conveyance |

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 1. Amount Due at Lease Signing or Delivery (Itemized Below) | 2. Single Periodic Payment | 3. Other Charges (not part of your single periodic payment) | 4. Total of Payments (The amount you will have paid by the end of the lease.) |
|---|---|---|---|
| $   14350.65 | Your single periodic payment of $   10641.12   is due on 27 FEB 2012. This is the total of the periodic payments. | Disposition fee (if you do not purchase the vehicle) $   N.A. $   N.A. Total $   N.A. | $   14350.65 |

5. Amount Due at Lease Signing or Delivery:

| | | 6. How the Amount Due at Lease Signing or Delivery will be paid: | |
|---|---|---|---|
| a. Capitalized cost reduction | $ 1500.00 | a. Net trade-in allowance | $ -0- |
| b. Single periodic payment | $ 10641.12 | b. Rebates and noncash credits | $ 1500.00 |
| c. Refundable security deposit | $ N.A. | c. Amount to be paid in cash | $ 12850.65 |
| d. GMAC administrative fee | $ 795.00 | | |
| e. License/registration/title fees | $ 194.74 | | |
| f. Sales/use tax | $ N.A. | | |
| g. Other tax (describe)        Tax On Fees/Cap Red Tax | $ 228.30 | | |
| h.        FL Fees( 66-50 ) MVWEA(2-00) | $ 68.50 | | |
| i.        DLR FEE/ENV PROT | $ 822.99 | | |
| j. | $ N.A. | | |
| k. Total | $ 14350.65 | d. Total | $ 14350.65 |

*Itemization of Amount Due at Lease Signing or Delivery

7. Your single periodic payment is derived as shown below:

a. **Gross capitalized cost.** The agreed upon value of the vehicle ($   32467.96   ) and any items you pay for over the lease term (such as service contracts and any outstanding prior credit or lease balance) ........................ $ 32467.96

b. **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost ........................ — $ 1500.00

c. **Adjusted capitalized cost.** The amount used in calculating your base single periodic payment ........................ = $ 30967.96

d. **Residual value.** The value of the vehicle at the end of the lease used in calculating your base single periodic payment ........................ — $ 23389.70

e. **Depreciation and any amortized amounts.** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ........................ = $ 7578.26

f. **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts ........................ + $ 2366.62

g. **Total of base periodic payments.** The depreciation and any amortized amount ........................ = $ 9944.88

h. **Lease payments.** The number of payments in your lease ........................ ÷ 1

i. **Base single periodic payment** ........................ = $ 9944.88

EXHIBIT A

b. Single periodic payment ......................................................... $ | 10641.12
e. No trade-in allowance. | $
c. Refundable security deposit .................................................. | b. Rebates and noncash credits ............................. | $ 1500.00
d. GMAC administrative fee .................................................... $ | N.A. | c. Amount to be paid in cash ................................. | $ 12850.65
e. License/registration/title fees ............................................... $ | 795.00
f. Sales/use tax .................................................................. $ | 194.74
g. Other tax (describe) __Tax On Fees/Cap Red Tax__ ................ $ | N.A.
h. __FL Fees( 66-50 ) MVWEA(2-00)__ ................................ $ | 228.30
i. __DLR FEE/ENV-PROT__ ................................................. $ | 68.50
j. ................................................................................... $ | 822.99
                                                                 N.A.
                                        k. Total ...... $ | 14350.65 | d. Total ...... $ | 14350.65

**7. Your single periodic payment is derived as shown below:**

a. Gross capitalized cost. The agreed upon value of the vehicle ($ __32467.96__ ) and any items you pay for over the lease term (such as service contracts and any outstanding prior credit or lease balance) ................................................................................................................. $ | 32467.96

b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. ........ − $ | 1500.00

c. Adjusted capitalized cost. The amount used in calculating your base single periodic payment. ..................................................................................... = $ | 30967.96

d. Residual value. The value of the vehicle at the end of the lease used in calculating your base single periodic payment. ....................................................... − $ | 23389.70

e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term. ........................................................................................................................................................................................................................... = $ | 7578.26

f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts. ............................................................................. + $ | 2366.62

g. Total of base periodic payments. The depreciation and any amortized amounts plus the rent charge. ..................................................................... = $ | 9944.88

h. Lease payments. The number of payments in your lease. ............................................................................................................................................... ÷ | 1

i. Base single periodic payment. ........................................................................................................................................................................................ = $ | 9944.88

j. Sales/use tax (estimated). ................................................................................................................................................................................................ + $ | 696.24

k. ................................................................................................................................................................................................................................................ N.A.

l. Total single periodic payment. ........................................................................................................................................................................................ = $ | 10641.12

**8.** **Early Termination. You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.**

**9.** **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of __16,000__ ✓ miles per year at the rate of $ __.20__ per mile. **Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ __25889.70__ plus official fees and taxes.

**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options, and maintenance responsibilities, warranties, default charges, and insurance.

---

**11. ITEMIZATION OF GROSS CAPITALIZED COST.**

a. Agreed upon value of the vehicle ............................................................................... $ | 32467.96
b. ....................................................................................................................................... + $ | N.A.
c. Gross Capitalized Cost. .......................................................................................... = $ | 32467.96

**12. THE VEHICLE YOU ARE TRADING.**  __N.A.__ (year)  __N.A.__ (make)  __N.A.__ (model)
Gross trade-in value. ...................................................................................................... $ | N.A.
Payoff ................................................................................................................................. − $ | N.A.
Net trade-in value .......................................................................................................... = $ | N.A.

**13. OFFICIAL FEES AND TAXES.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on us (except our net income taxes) and government levies on you, the vehicle, or us (except our net income taxes). We may bill you separately for official fees and taxes.

TOTAL ESTIMATED FEES AND TAXES YOU MUST PAY DURING LEASE ............................. $ | 1382.52
The actual total of fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.
a. Title/lien fees .................................................................................................................. $ | N.A.
b. Registration fees/taxes. ............................................................................................... $ | N.A.

---

**Insurance Notice**

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for bodily injury, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of at least $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must have deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

**The valid and collectible insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.**

**YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS UNDER ANY**

Case 1:14-cv-22069-DPG Document 1-2 ... Entered on FLSD Docket 10/27/2014 Page 16 of 23
... ............. additional information on early termination, purchase options, late/termination responsibilities, warranties, default charges, and insurance.

**11. ITEMIZATION OF GROSS CAPITALIZED COST.**

a. Agreed upon value of the vehicle. ............................ $ 32467.96

b. ..................................................................................... N.-A.

c. Gross Capitalized Cost......................... + $ ____

= $ 32467.96

**12. THE VEHICLE YOU ARE TRADING.** N.A.
(year)      (make)      (model)

Gross trade-in value........................................ $ N.A.

Payoff............................................................... - $ N.A.

Net trade-in value............................................. = $ N.A.

**13. OFFICIAL FEES AND TAXES.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may bill you separately for official fees and taxes.

**TOTAL ESTIMATED FEES AND TAXES YOU MUST PAY DURING LEASE** ......... $ 1382.52

The actual total of fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

a. Title/lien fees ............................................................ $ N.A.

b. Registration fees/taxes............................................. $ N.A.

c. License fees/taxes................................................... $ 389.48

d. Sales/use taxes (including tax on capitalized cost reduction).... $ 924.54

e. Excise taxes ............................................................ $ N.A.

f. Property taxes............................................................ $ N.A.

g. Other (describe) ___FLORIDA FEES___ $ 66.50

h. Other (describe) ___MVWEA___ $ 2.00

i. Other (describe) _____ $ N.A.

**14. CHARGE FOR FINES.** If the government places a fine on the vehicle and you do not pay it promptly, we may pay it. Each time we pay a fine, you will pay us the fine plus $20.

**15. SCHEDULED LEASE END DATE.** This lease is scheduled to end 02-26-14
(month) (day) (year)
You are scheduled to return the vehicle on this date.

**16. LEASE END DAILY EXTENSION CHARGE.** $ 39.00 per day (plus tax), beginning on the eighth day after scheduled lease end date.

**17. MILEAGE.** ULTRA LOW MILEAGE PROGRAM 10,000 MI./yearly in 9
Base Mileage Allowance. ☐15,000 miles/year.   ☐Low mileage: 12,000 miles/year.
☐Medium-duty truck (gasoline): 25,000 miles/year
☐Medium-duty truck (diesel): 35,000 miles/year

Extra Miles. You are buying ___-0-___ extra miles at $ N.A. per mile. If this lease ends on or after the start of the last monthly period, we will credit you with $ ____ per mile for each unused extra mile. There will be no credit if the lease ends early, you buy the vehicle, or the vehicle is a total loss.

Total Allowed Mileage on the Odometer at Lease End is ___20,070___ miles.

Starting odometer mileage _____ 78 miles

Base mileage allowance........... + 19,992 miles

Purchased extra miles............. + -0- miles

**Excess Mileage Charge.** The excess mileage charge is $ .20.20 per mile for each mile beyond the total allowed miles, plus tax. If the lease ends early and the vehicle is not a total loss, any excess mileage and wear charge will not be more than residual value minus two ...

---

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of at least $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must have deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

**Insurance Notice**

**The valid and collectible insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.**

**YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS UNDER THE AGREEMENT.**

USAA INS

**(NAME OF LESSEE'S INSURANCE COMPANY)**

**REQUIRED VEHICLE INSURANCE INFORMATION.** You affirm that liability and physical damage policies that meet our requirements (see the other side) are in force on the date of this lease as follows:

Insurance company name: ___USAA INS___

Insurance agency name: ___USAA DIRECT___

Agency address: ___9800 FREDERICKSBU   SAN ANTONIO   TX___

Agency phone no.: ___800 531-8722___

Agent's name: ___USAA DIRECT___

Policy no.: ___00795424 C 7104___ ☐Liability ☐Physical damage

Deductibles: Collision $ 1000.00   Comprehensive $ 1000.00

Insurance company name: _____

Insurance agency name: _____

Agency address: _____

Agency phone no.: _____

Agent's name: _____

Policy no.: _____ ☐Physical damage

Deductibles: Collision $ ____ Comprehensive $ ____

**19. WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of any warranty checked below.

☐ Standard manufacturer's warranty

☐ _____

Warranty papers that are separate from this lease state any coverage limits.

The law gives you a warranty that the vehicle conforms to the description in this lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE. WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY. THERE IS NO WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.**

**20. OPTIONAL SERVICE AND MAINTENANCE CONTRACTS.**

15. SCHEDULED LEASE END DATE. This lease is scheduled to end _____ _____ _____ (month) (day) (year) You are scheduled to return the vehicle on this date.

16. LEASE END DAILY EXTENSION CHARGE. $_____ 39.00 per day (plus tax), beginning on the eighth day after scheduled lease end date.

17. MILEAGE. Ultra Low Mileage Program 10,000 mi/yearly w/

Base Mileage Allowance. ☐15,000 miles/year. ☐Low mileage: 12,000 miles/year.
☐Medium-duty truck (gasoline): 25,000 miles/year
☐Medium-duty truck (diesel): 35,000 miles/year

Extra Miles. You are buying _____0_____ extra miles at $____N.A.____ per mile. If this lease ends on or after the start of the last monthly period, we will credit you with $____N.A.____ per mile for each unused extra mile. There will be no credit if the lease ends early, you buy the vehicle, or the vehicle is a total loss.

Total Allowed Mileage on the Odometer at Lease End is _____20,070_____ miles.

Starting odometer mileage. _____78_____ miles
Base mileage allowance. _____19,992_____ miles
Purchased extra miles. _____0_____ miles

Excess Mileage Charge. The excess mileage charge is $____$0.20____ per mile for each mile beyond the total allowed miles, plus tax. If the lease ends early and the vehicle is not a total loss, any excess mileage and wear charge will not be more than residual value minus the vehicle sale price. There is no excess mileage charge if you buy the vehicle.

18. REQUIRED VEHICLE INSURANCE. You must insure the vehicle through liability and physical damage policies acceptable to us. The policies must not exclude or restrict coverage if you were to drive the vehicle, or when the driver is someone you allow to drive the vehicle or who is likely to drive the vehicle. The policies must show any additional insureds and loss payees that we require. If this lease is assigned to GMAC the additional insured and loss payee is "GMAC and its successors and assigns", P.O. Box 650100, Hunt Valley, MD 21065-0100. You must give us proof of insurance when we ask. We require no other insurance.

Liability insurance must (a) cover at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, or (b) have a combined single limit of at least $500,000 for bodily injuries and property damage for any one accident.

THIS IS THE ENTIRE AGREEMENT. This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle. Any change to the terms of this lease must be in writing and signed by you and us. No oral changes are binding.

LESSEE: X _____  BY: X _____  CO-LESSEE: X _____

We may delay or refrain from enforcing any of our rights under this lease without losing them.

NOTICE TO LESSEE. 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT ____MIAMI, FL____ (city) ____FL____ (state) ON ____(month)27-12 (day)____ (year)

LESSEE: X _____  BY: X _____  CO-LESSEE: X _____

LESSOR: ____WESLEY GRAHAM REID____  ____Miami Lakes Co LLC____  SIGNATURE AND TITLE: X _____  CO-LESSEE: X _____  TITLE: _____

LESSOR: ____Miami Lakes Co LLC____  BY: X _____

SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST.

Lessor assigns all right, title, and interest in this lease to the party identified in this lease as the intended assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time with the assignee (the "Dealer Agreement"). Lessor also assigns all right, title, and interest in the leased vehicle to the party identified in this lease as the intended assignee, or its designee, under the terms of the Dealer Agreement.

671 SINGLE FL 6/2006(4) (For use in the State of Florida)
Copyright 2006 GMAC. All Rights Reserved.

---

Policy no.: _____
Deductibles: Collision $ ____295424 C 7104____  ☐Liability  ☐Physical damage  Comprehensive $ ____1000.00____  ____1000.00____

Insurance company name: _____
Insurance agency name: _____
Agency address: _____
Agency phone no.: _____
Agent's name: _____
Policy no.: _____  ☐ Physical damage
Deductibles: Collision $ _____  Comprehensive $ _____

19. WARRANTY AND EXCLUSION OF WARRANTY. You have the benefit of any warranty checked below.

☐Standard manufacturer's warranty

Warranty papers that are separate from this lease state any coverage limits.
The law gives you a warranty that the vehicle conforms to the description in this lease.
THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE. WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY. THERE IS NO WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.

20. OPTIONAL SERVICE AND MAINTENANCE CONTRACTS.

Name ____N.A.____  Term ____N.A.____ months, ____N.A.____ miles
Name _____  Term ____N.A.____ months, ____N.A.____ miles

If you are buying a service or maintenance contract now, you may pay for it at lease signing. If you do not, the price will be in the capitalized cost and you will pay rent charges on the price. You are not required to buy a service or maintenance contract as part of this lease. Your choice of providers for any service or maintenance contract will not affect our decision to lease to you.

Lease Agreement 9

## INSURANCE, USE, AND CARE OF THE VEHICLE

**21. USE.** You will not

— Use the vehicle illegally, improperly, or for hire.
— Use the vehicle in a way that your insurance policy prohibits.
— Remove the vehicle from the United States, except for trips to Canada of under 60 days.
— Move the vehicle to another state for more than 30 days without telling us.
— Change the vehicle without our written consent.
— Replace parts, accessories, or tires with rented or leased items.
— Expose the vehicle to seizure, confiscation, forfeiture, or other involuntary transfer.

You will not let anyone else do any of these things.

**22. MAINTENANCE, REPAIRS, OPERATING EXPENSES, AND DAMAGE.** You will maintain and repair the vehicle to keep it in good condition. Replacement sheet metal must be new original equipment manufacturer parts. Other replacement parts must be original equipment manufacturer parts or parts of equal quality and design. (If insurance will pay for repairs, ask your insurance company to specify original equipment manufacturer sheet metal.) You will pay all maintenance, repair, and operating expenses, including gas and oil. If the odometer stops working, you must fix it immediately. You will service the vehicle as the manufacturer recommends. You will follow the manufacturer's instructions in any recall. If you don't do these things, we may do them. You will owe us our cost if we do. We may inspect the vehicle at any reasonable time and place.

## WHEN THE LEASE CAN END

**25. SCHEDULED END.** This lease is scheduled to end on the date shown on the front. If this lease ends on or after the start of the last monthly period, we will treat the lease as if it ended as scheduled and not as if it ended early. However, if the vehicle is a total loss before the scheduled lease end date, the Gap Protection section applies.

**26. LEASE END DAILY EXTENSION.** At scheduled lease end, if you keep the vehicle and do not pay it, you elect to extend the lease and pay a daily extension charge beginning on the eighth day after the scheduled lease end date. The charge is shown on the front. We may limit the number of days you extend the lease. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to early end. The total allowed mileage will not increase.

**27. EARLY END.** You may end this lease anytime. We may end this lease if you are in default or if the vehicle is a total loss.

**28. DEFAULT.** You will be in default if any of these things happens:

— You do not pay on time.
— You made a material misrepresentation when you applied for this lease.
— You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
— You break any other agreements in this lease.
— You do anything the law says is a default.

## AT LEASE END

**30. VEHICLE RETURN.** At lease end, you will return the vehicle (including any dealer installed options you do not buy outright) to any reasonable place we tell you, unless you buy the vehicle. After you return the vehicle, you will call us promptly at 1-800-200-4622 and tell us where you left the vehicle.

**31. OPTION TO BUY THE VEHICLE.** You have an option to buy the vehicle only at scheduled

When you take possession of the vehicle, you take on the risks of loss of the vehicle and of damage to it. If the vehicle is damaged, stolen, or destroyed and money becomes available from insurance, a judgment, a settlement, or the like, we will treat the money as an insurance settlement. We and/or Vehicle Asset Universal Leasing Trust will be entitled to this money. If the lease ends in connection with our receipt of the money, we will treat any money we do not use to repair the vehicle as sale proceeds.

**23. EXCESS WEAR.** Excess wear is wear that is beyond normal wear. Excess wear includes: (a) glass that is damaged or that you tinted; (b) a damaged or corroded body, trim, frame, crossmember, suspension, engine, powertrain, or other mechanical part; (c) damaged paint; (d) a torn, damaged, or stained interior or trunkliner; (e) a pickup bed with a non-dealer installed sprayed-on bedliner; (f) sheet metal that is not original equipment sheet metal; (g) missing equipment or parts that were in or on the vehicle when delivered and not replaced with equipment or parts of equal quality and design (including a missing wheel, wheel cover, jack, or wheel wrench); (h) a tire (including spare) that is unsafe, is not the size and type the manufacturer recommends, is recapped or a snow tire, or has less than 1/8 inch of tread left at the shallowest point; (i) a damaged or worn brake that does not meet government safety standards; (j) oil leaks or low oil pressure; (k) a malfunctioning electrical system, battery, or lights; (l) any other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way; and (m) any other damage, whether or not insurance covers it.

**24. LIENS.** You will keep the vehicle free of liens unless we agree to them. If you do not remove any liens, we may do so. You will pay us any amount we pay to do so.

If you are in default, we may

— End this lease and require you to pay any amount due according to the What You Owe at Early End Section.
— Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle. If the vehicle has an electronic locating device, we may use the device to find the vehicle.
— Sue you for damages and forget the vehicle back.
— Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle, attorney's fees, collection costs, and court costs.

**29. TRANSFER.** You may not be able to transfer this lease instead of ending it early, if we approve. If you would like to transfer this lease, please ask us about the requirements and your responsibilities.

**32. ODOMETER DISCLOSURE.** Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

day after the scheduled lease end date. The charge is shown on the front. We may limit the number of days you extend the lease. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to early end. The total allowed mileage will not increase.

**27. EARLY END.** You may end this lease anytime. We may end this lease if you are in default or the vehicle is a total loss.

**28. DEFAULT.**
You will be in default if any of these things happens:
— You do not pay on time.
— You made a material misrepresentation when you applied for this lease.
— You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
— You break any other agreements in this lease.
— You do anything the law says is a default.

## AT LEASE END

**30. VEHICLE RETURN.** At lease end, you will return the vehicle (including any dealer installed options you do not buy outright) to any reasonable place we tell you, unless you buy the vehicle. After you return the vehicle, you will call us promptly at 1-800-200-4622 and tell us where you left the vehicle.

**31. OPTION TO BUY THE VEHICLE.** You have an option to buy the vehicle only at scheduled lease end. See the front for the price. You must pay any related official fees and taxes.

## WHAT YOU OWE AT LEASE END

**33. WHAT YOU OWE AT SCHEDULED END.**
(a) IF YOU BUY THE VEHICLE. If you have paid us and kept your agreements, you will owe us nothing more.

(b) IF YOU DO NOT BUY THE VEHICLE. If you have kept your agreements, you will owe us only any excess mileage charge, any lease end daily extension charge, and our estimated or actual cost of repairing excess wear, plus any tax. (We do not have to make repairs.)

**34. WHAT YOU OWE AT EARLY END.** The single periodic payment due at lease signing, prepayment, or residual value, and our charges, plus the rent charge. If this lease ends early, we may give you a credit for some portions of these amounts. If the vehicle is a total loss, see the Gap Protection section. Otherwise, to determine whether you owe us or we owe you, and the amount, we will:

A. Give you a credit for any unearned rent charge, based on the number of full monthly periods between early end and scheduled end. The first monthly period begins on the day you sign this lease. We will use the actuarial method to figure the unearned rent charge on a monthly basis. (You may ask us for an explanation of the actuarial method.) We will treat the rent charge for each monthly period as fully earned on the period's first day.

B. Sell the vehicle at wholesale, unless you get an appraisal or gap protection applies. If we sell the vehicle for more than residual value, we will give you a surplus credit for the excess, up to the amount of remaining prepaid depreciation. The remaining prepaid depreciation is:
The base single periodic payment,
÷ The number of months in the lease,
X The number of full monthly periods between early end and scheduled end,
− The unearned rent charge credit.
If we sell the vehicle for residual value or less, the surplus credit will be zero.

C. Charge you for any excess mileage and excess wear if we sell the vehicle for less than residual value. This charge will not exceed our estimate or actual cost of excess mileage charge, plus our estimate or actual cost of wear or any repairs the vehicle needs because of excess wear, plus any tax. This charge will not exceed residual value minus the vehicle sale price.

D. Give you a credit for any amount we get from cancellations of optional service, maintenance, or other contracts that we financed for you.

E. Charge you for any unpaid fees and taxes and any amounts due because you broke agreements in this lease.

If the sum of the credits exceeds the sum of the charges, we will refund the difference to you

— Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle, attorney's fees, collection costs, and court costs.

**29. TRANSFER.** You may be able to transfer this lease instead of ending it early, if we approve. If you would like to transfer this lease, please ask us about the requirements and your responsibilities.

**32. ODOMETER DISCLOSURE.** Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

B. Give you a gap credit for the remaining prepaid depreciation. The remaining prepaid depreciation is:
The base single periodic payment,
÷ The number of months in the lease,
X The number of full monthly periods between early end and scheduled end,
− The unearned rent charge credit.

C. Give you an insurance surplus credit based on the amount of the insurance settlement.
1) If the money we get from your insurance is more than residual value plus the remaining prepaid depreciation, the difference will be the insurance surplus credit.
2) If the money we get from your insurance is less than or equal to residual value plus the remaining prepaid depreciation, the insurance surplus credit is zero.

D. If there is no insurance surplus credit, charge you the amount of your insurance deductible, up to the amount, if any, by which residual value plus remaining prepaid depreciation exceeds the money we get from your insurance.

E. Also, if there is no insurance surplus credit, charge you for any excess mileage, up to the amount, if any, by which residual value plus remaining prepaid depreciation exceeds the money we get from your insurance plus the deductible. We will charge you for any tax on the excess mileage charge.

F. Give you a credit for any amount we get from cancellations of optional service, maintenance, or other contracts that we financed for you.

G. Charge you for any unpaid fees and taxes and any amounts due because you broke agreements in this lease.

If the sum of the credits exceeds the sum of the charges, we will refund the difference to you. If the sum of the charges exceeds the sum of the credits, you will owe us the difference.

If the vehicle is a total loss and we do not get an insurance settlement, there is no gap protection. We will:

A. Give you an unearned rent charge credit, figured as described above.
B. Charge you any excess of the vehicle's residual value over its salvage value.
C. Give you a credit for any amount we get from cancellations of optional service or maintenance contracts.

If the vehicle or financing is not leased,

X The number of full monthly periods between an early end and any scheduled end.
– The unearned rent charge is a part of the rent charge you pay us for any unpaid fees and taxes and any amounts due because you broke

If we sell the vehicle for residual value or less, the surplus credit will be zero.

C. Charge you for any early excess mileage and excess wear if we sell the vehicle for less than residual value. This charge is any excess mileage charge, plus our estimate or actual cost of any repairs the vehicle needs because of excess wear (we do not have to make repairs), plus any tax. This charge will not exceed residual value minus the vehicle sale price.

D. Give you a credit for any amount we get from cancellations of optional service, maintenance, or other contracts that we financed for you.

E. Charge you for any unpaid fees and taxes and any amounts due because you broke agreements in this lease.

If the sum of the credits exceeds the sum of the charges, we will refund the difference to you. If the sum of the charges exceeds the sum of the credits, you will owe us the difference.

**Appraisal.** You may get a professional appraisal of the vehicle's wholesale value, if you do so within a reasonable time, we will use the appraised value as the sale price when we figure the surplus credit (if any). The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

**35. GAP PROTECTION.** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement, you have gap protection, instead of the credits and charges above, we will:

A. Give you a credit for any unearned rent charge, based on the number of full monthly periods between early end and the scheduled lease end date. The first monthly period begins on the day you sign this lease. We will use the actual method to figure the unearned rent charge on a monthly basis. (You may ask us for an explanation of the actuarial method.) We will treat the rent charge for each monthly period as fully earned on the period's first day.

G. Charge you for any unpaid fees and taxes and any amounts due because you broke agreements in this lease.

If the sum of the credits exceeds the sum of the charges, we will refund the difference to you. If the sum of the charges exceeds the sum of the credits, you will owe us the difference.

If the vehicle is a total loss and we do not get an insurance settlement, there is no gap protection. We will:

A. Give you an unearned rent charge credit, figured as described above.

B. Charge you any excess of the vehicle's residual value over its salvage value.

C. Give you a credit for any amount we get from cancellations of optional service or maintenance contracts.

D. Charge you for any unpaid fees and taxes and any amounts due because you broke agreements in this lease.

If the sum of the credits exceeds the sum of the charges, we will refund the difference to you. If the sum of the charges exceeds the sum of the credits, you will owe us the difference.

**36. SECURITY DEPOSIT.** If you paid a security deposit, we will use it at lease end to pay anything you owe under this lease and do not pay. We will not pay you interest on the security deposit. We will not add to the security deposit any proceeds, money, or funds we receive from the security deposit. After lease end, we will give back any part of the security deposit that is left.

## ADDITIONAL TERMS

**37. ASSIGNMENT BY LESSOR.** If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

Any sale and assignment will not be considered to change materially your duties, burden, or risk under this lease. Neither the assignee nor Vehicle Asset Universal Leasing Trust will have to make any repairs to the vehicle, get any insurance, or perform any service Lessor has agreed to perform under this lease. You will look only to Lessor for these services.

After assignment, GMAC will service this lease, if GMAC is the assignee or if GMAC helped to arrange this lease. You must then make all payments to GMAC (for its or the assignee's account) or as otherwise directed. If we assign this lease, you will not receive notice of assignment.

**38. PROHIBITION OF TRANSFER OF YOUR INTEREST.** YOU WILL NOT SUBLEASE OR OTHERWISE TRANSFER (EXCEPT TO YOUR ESTATE) ANY RIGHT OR INTEREST YOU HAVE UNDER THIS LEASE OR IN THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

You may be able to transfer this lease instead of ending it early, if we approve. If you would like to transfer this lease, please ask us about the requirements and responsibilities.

**39. INDEMNITY.** You will protect us from all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, or operation of the vehicle. You agree to indemnify, and hold harmless, us and our assigns from all such losses, damages, injuries, claims, demands, and expenses.

**THIS IS A LEASE AGREEMENT.
THIS IS NOT A PURCHASE AGREEMENT.
PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK
INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY
QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE
ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS.**

Case 1:14-cv-22069-DPG   Document 61-2   Entered on FLSD Docket 08/29/2016   Page 21 of 23

## TRANSFER OF LEASE OBLIGATION

| | | |
|---|---|---|
| Lessee: | Wesley G Reid | |
| Co-Lessee: | | |
| Account Number: | 2604 | |

| | |
|---|---|
| Date: | November 13, 2012 |
| VIN: | 2C3CDYBT5CH174187 |
| Year, Make, Model: | 2012 Dodge Challenger |
| Body Type: | 2D |

The original Lessee and any Co-Lessee assign all their rights and interest in this Lease Agreement (copy attached) to the person(s) named below as New Lessee and New Co-Lessee (if any).

The New Lessee and any New Co-Lessee agree to assume the obligations of this Lease Agreement (copy attached) and to perform all of those obligations, including payment of any unpaid personal property taxes and summons fees from prior periods and all other fees and taxes owed in accordance with the Lease Agreement.

The monthly payment is based on:

| | | |
|---|---|---|
| Base monthly payment | $ | N/A |
| Rental / use tax | | N/A |
| Other | | N/A |
| **The monthly payment will be:** | $ | N/A |

At the time of the transfer, the amount of $ _____0.00_____ is being held as a security deposit.

Ally Bank has received a processing fee of $ _____595.00_____ for the transfer.

Ally Bank has received a security deposit amount of $ _____0.00_____ in conjunction with the transfer.

| | | |
|---|---|---|
| By: | _Mats_ | |
| Name: | Monikolt Trous | |
| Date: | 11/19/12 | |

| | |
|---|---|
| Original Co-Lessee: | |
| By: | |
| Name: | |
| Date: | |

| | |
|---|---|
| Original Lessee: | |
| By: | |
| Name: | Wesley G Reid |
| Date: | 11/15/2012 |

| | |
|---|---|
| New Lessee: | |
| By: | |
| Name: | Robert A Schreiber |
| Date: | 11/15/2012 |

| | |
|---|---|
| New Co-Lessee: | |
| By: | |
| Name: | |
| Date: | |

### ODOMETER DISCLOSURE STATEMENT

Federal Law (and State law, if applicable) requires that the lessee disclose the mileage to the lessor in connection with the transfer of ownership. Failure to complete or making a false statement may result in fines and/or imprisonment. Complete the disclosure form below and return it to the Lessor.

I, _Wesley Reed_ (Lessee Print) state that the odometer now reads _4342_ (No Tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described above, unless one of the following statements is checked.

☐ (1)   I hereby certify that to the best of my knowledge the odometer reading reflects the mileage in excess of its mechanical limits.

☐ (2)   I hereby certify that the odometer reading is NOT the actual mileage, and should not be relied upon.

| | | |
|---|---|---|
| Lessee Name: | Wesley G Reid | |
| | 4220 S Douglas Rd | |
| | Coconut Grove, FL 33133 | |
| Lessee's Signature | | |
| Date of Statement | 11/15/2012 | |

| | |
|---|---|
| Lessor Name: | Ally Bank |
| | P.O. Box 380901 |
| | Bloomington, MN 55438 |
| Date Disclosure Form Sent to Lessee | 11-13-12 |
| Date Completed Disclosure Form Received from Lessee | 11-19-12 |
| Lessor's Signature | Mats |

Attachment: Copy of Lease Agreement


**EXHIBIT**
B

Case 1:14-cv-22069-DPG Entered 01/13/2016 Page 22 of 23

# GMAC SMARTLEASE® AGREEMENT — Monthly Payment

Lessee (and Co-Lessee) ("You") name and address, including county:

WINIFRED C BURNFIELD
822 AVALON DR SE
UMBER QL 44084 CO., TRUMBULL

Garaging address (if different): N/A

Principal driver (if business use): N/A

LESSOR (Retailer):

VAL WARD CADILLAC, INC.
12626 TAMIAMI TRAIL S
FORT MYERS, FL 33907

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back.

| Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use |
|---|---|---|---|---|---|
| 2010 | CADILLAC SRX-V6 | 4-DOOR | 3GYFNAE2#AS522934 | 145 | ☑ Personal, Family, or Household ☐ Agricultural ☐ Commercial, Business, # ☐ Public Conveyance |

**1. Amount Due at Lease Signing or Delivery (Itemized Below)**
$ 15606.10

**2. Monthly Payments**
Your first monthly payment of $ 170.00 is due on
11/30/2009 followed by 35 payments of $
170.00 due on the 30th of each month.
The total of your monthly payments is $ 6120.00

**3. Other Charges** (not part of your monthly payment)
Disposition fee (if you do not purchase the vehicle) $ N/A
Total $ N/A

**4. Total of Payments** (The amount you will have paid by the end of the lease.) $ 21456.10

*Itemization of Amount Due at Lease Signing or Delivery

**Amount Due at Lease Signing or Delivery:**

a. Capitalized cost reduction $ 13698.56
b. First monthly payment $ 170.00
c. Refundable security deposit $ N/A
d. Title fees $ 15.00
e. Registration fees $ 324.00
f. Sales/use tax $ 1290.04
g. N/A
h. N/A $ 8.50
i. BATTERY FEE/TIRE FEE $ N/A
j. Total $ 15606.10

**6. How the Amount Due at Lease Signing or Delivery will be paid:**
a. Net trade-in allowance $ N/A
b. Rebates and noncash credits $ 600.00
c. Amount to be paid in cash $ 14906.10
d. Total $ 15606.10

**7. Your monthly payment is determined as shown below:**
a. Gross capitalized cost. The agreed upon value of the vehicle ($ 34747.65 ) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). $ 36547.65
b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. $ 13698.56
c. Adjusted capitalized cost. The amount used in calculating your base monthly payment. $ 21844.09
d. Residual value. The value of the vehicle at the end of the lease used in calculating your base monthly payment. $ 19057.50
e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term. $ 2976.59
f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts. $ 3183.41
g. Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge. $ 6120.00
h. Lease payments. The number of payments in your lease. 36
i. Base monthly payment. $ .

**f.** 
**f.** 
**k.** Monthly sales/use tax (estimated) ............... N/A

**l.** Total monthly payment .......................

Early Termination: You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8.** Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use and for mileage in excess of ... 12,000 ... miles per year at the rate of $ ... 20 ... per mile.

**9.** Purchase Option at End of Lease Term. You have an option to buy the vehicle at the end of the lease term for $ ... 21367.50 ... plus official fees and taxes.

**10.** Other Important Terms: See your lease documents for additional information on early termination, purchase options and maintenance responsibilities. Warranties, late and default charges, and insurance.

**11. ITEMIZATION OF GROSS CAPITALIZED COST.**
a. Agreed upon value of the vehicle ............... $ 31747.55
b. GMAC acquisition/title fee ............... 795.00
c. License/registration/title fees ...............
d. Sales tax ............... N/A
e. Other tax (describe) ............... N/A
f. Optional service contract ............... N/A
g. Optional maintenance contract ............... 29.00
h. Optional life insurance ............... N/A
i. Optional disability insurance ............... N/A
j. ............... N/A
k. ............... N/A
l. ............... N/A
m. Gross Capitalized Cost ............... = $ 35542.55

**12. THE VEHICLE YOU ARE TRADING.**          (year)     (make)     (model)
Gross trade-in value ............... N/A     $           $           N/A
Payoff ............... $           N/A
Net trade-in value ............... = $           N/A

**13. OFFICIAL FEES AND TAXES.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may charge your monthly payment if taxes change. We may bill you separately for official fees and taxes.

**TOTAL ESTIMATED FEE AND TAXES YOU MUST PAY DURING LEASE** ............... $ 2237.54

The actual total of fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.
a. Title/lien fees ............... 35.00
b. Registration fees/taxes ............... N/A
c. License fees/taxes ............... 924.00
d. Sales/use taxes (including tax on capitalized cost reduction) ............... 1290.04
e. Excise taxes ............... N/A
f. Property taxes ............... N/A
g. Other (describe) ............... N/A
h. Other (describe) ............... N/A

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of at least $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must have deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

**Insurance Notice**

The valid and collectible insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

**YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS UNDER THE AGREEMENT.**

**(NAME OF LESSEE'S INSURANCE COMPANY)**

**REQUIRED VEHICLE INSURANCE INFORMATION:** You affirm that liability and physical damage policies that meet our requirements (see the other side) are in force on the date of this lease as follows:

Insurance company name: ... STATE AUTO INS ...
Insurance agency name: ... MIDWEST TRUCK CO ...
Agency address: ... 1620 NILES-CORTLAND RD NEWARREN OH 44484 ...
Agency phone no.: ... (330)609-6232 ...
Agent's name: ... N/A ...
Policy no.: ... AGH 0089728 ... Liability [X]Physical damage
Deductibles: Collision $ ... 500.00 ... Comprehensive $ ... 500.00 ...

Insurance company name: ... N/A ...