UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

---

ROBERT A. SCHREIBER,
individually and on behalf
of all others similarly situated,

        Plaintiff,

v.

ALLY FINANCIAL INC.,

        Defendant.

Civil Action No. 1:14-cv-22069

---

**PLAINTIFF'S RESPONSE TO STEPHEN KRON'S OBJECTION TO
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AND
<u>CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES</u>**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION. ............................................................................................................. 1

II. THE OBJECTION TO THE SETTLEMENT SHOULD BE OVERRULED. ......................................... 1

    A. The Settlement Class Satisfies Rule 23(b)(3). .............................................................. 2

    B. The Settlement's *Cy Pres* Provision Is Appropriate, Fair, And Reasonable. ................. 4

    C. The Settlement Is Free From Collusion. ....................................................................... 6

III. THE OBJECTION TO CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE OVERRULED ........................................................................................ 7

    A. Class Counsel's Fee Request Is Reasonable And Adheres To Prevailing Law In This Circuit And District. ..................................................................................................... 7

    B. Fees Should Be Awarded Based On The Full Value Of The Settlement. ..................... 8

    C. A Lodestar Cross Check Should Be Rejected. ............................................................ 10

IV. THE OBJECTION LACKS CREDIBILITY. ................................................................................. 11

V. CONCLUSION ................................................................................................................ 12

## I. INTRODUCTION.

The Settlement with Ally Financial, Inc. drew only a *single* objection from a total of 237,039 potential Class Members who received the direct-mail notice—a microscopic .0004% of the potential Class—much fewer than consumer settlements typically attract.[1] This unusually "low percentage of objections points to the reasonableness of [the] proposed settlement and supports its approval." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

Given the substantial benefits provided to Class Members in the Settlement, this overwhelming acceptance is not surprising. With a value of almost $20 million, the Settlement provides meaningful compensation to Class Members. Offering to reimburse up to 100% of the improper fees Class Members were charged—with the parties having estimated that the average amount paid by each Class Member was approximately $238.06—the Settlement's benefits approach a complete trial victory, without any of the risks, costs, or delay of continued litigation.

As explained below, the single objection that has been submitted lacks merit, because the Settlement is fundamentally sound and the attorneys' fees sought in Class Counsel's application are fair, reasonable, and entirely consistent with Eleventh Circuit precedent. There are good reasons, moreover, to question the credibility of the objection, as the objector, Stephen Kron, and his counsel, Stephen D. Field, are "serial" or "professional" objectors who have challenged countless class settlements in this District and across the country, usually advancing the same canned arguments raised here.

Accordingly, Plaintiff respectfully urges the Court to grant final approval of this Settlement; to award the Class Representative the requested service award; and to award Class Counsel the requested attorneys' fees.

## II. THE OBJECTION TO THE SETTLEMENT SHOULD BE OVERRULED.

None of the arguments raised in the objection seriously calls into question the Settlement's satisfaction of Rule 23's requirements or its fairness, reasonableness, or adequacy.

---

[1] An extensive empirical review determined that the average number of objections to settlements of consumer class actions is *233*. *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1550 (2004). More recently, a settlement approved in the Volkswagen MDL received *462* objections. *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB, 2016 WL 6248426, at *16 (N.D. Cal. Oct. 25, 2016). By any measure, the single objection received here is remarkable.

### A. The Settlement Class Satisfies Rule 23(b)(3).

Relying on a case that the Ninth Circuit recently decided to reconsider *en banc*, Mr. Kron claims that "the Court must consider the varying state laws that may apply and ensure that predominance is not defeated." (ECF No. 95 at 2.) On the facts and as a matter of Eleventh Circuit law, Mr. Kron is mistaken.

The only case Mr. Kron relies upon for this argument is *In re Hyundai & Kia Fuel Economy Litigation*, 881 F.3d 679, 689 (9th Cir.), *reh'g en banc granted sub nom. In re Hyundai And Kia Fuel Economy Litigation*, 897 F.3d 1003 (9th Cir. 2018). Mr. Kron devotes almost half of his brief to quoting the *Hyundai* panel's decision, even though the Ninth Circuit recently ruled that the decision "shall ***not*** be cited as precedent by or to any court of the Ninth Circuit" because a majority of Ninth Circuit judges voted to rehear the case *en banc*, 897 F.3d at 1007 (emphasis added), a fact that Mr. Kron fails to mention. The panel's non-precedential decision, over a dissent, vacated an order approving a class settlement in a case brought under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the district court did not analyze whether variations in state consumer protection laws precluded class certification. *In re Hyundai*, 881 F.3d at 707.

On the facts, the *Hyundai* case is inapplicable here, because unlike in the *Hyundai* case, 881 F.3d at 680, this Court's jurisdiction does not rest solely on CAFA, 28 U.S.C. § 1332(d). That the *Hyundai* case arose exclusively under CAFA was a significant factor in the panel's reasoning. *See In re Hyundai*, 881 F.3d at 691 (beginning its analysis with the proposition that "[w]here plaintiffs bring a nationwide class action under CAFA and invoke Rule 23(b)(3), a court must consider the impact of potentially varying state laws"). Here, in contrast, Plaintiff asserted a federal claim under the Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.* (ECF No. 64, ¶¶ 35-41), and thus this Court has federal-question jurisdiction under 28 U.S.C. § 1331 (ECF No. 64, ¶ 9). Of course, there are no variations in the law applicable to a nationwide class asserting a uniform federal claim, so the *Hyundai* panel's focus on variations in state law does not apply here.

The *Hyundai* case also is inapplicable because the state-law claim asserted here—breach of contract—does not vary among different states like the consumer protection claims at issue in *Hyundai* may. Relying on a decision involving class certification in the litigation (as opposed to settlement) context, the Ninth Circuit observed that there may be material differences between the statutory consumer protection claims of various states. *In re Hyundai*, 881 F.3d at 696, 702. The

2

same cannot be said, however, with respect to breach-of-contract claims, particularly in the Eleventh Circuit. In *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit concluded that "the applicable state laws governing contract interpretation and breach are sufficiently identical to constitute common legal issues." *Id.* at 1263. Put another way, "[a] breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Id.* The Eleventh Circuit likewise affirmed certification of a nationwide breach-of-contract claim in *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003), because all the agreements at issue "were materially similar" and the defendant breached the agreements in the same manner, *id.* at 1261. The same facts are alleged here: the SmartLease at issue in this litigation is a form contract that is materially similar for all Class Members (ECF No. 64, ¶ 13), and the contract was breached in the same way—Class Members were charged improper fees that were not permitted or disclosed in their identical SmartLease agreements (ECF No. 64, ¶ 30).

Under *Klay* and *Allapattah*, then, Plaintiff's straightforward breach-of-contract claim does not give rise to state law variations that could impede class certification. Indeed, Mr. Kron never argues otherwise. He simply quotes the *Hyundai* decision at length and contends that the Court must "consider the varying state laws." (ECF No. 95 at 2.) It is not clear, however, that multiple states' laws would even apply. It was Mr. Kron's burden to raise the issue that another jurisdiction's law would apply and to adequately prove the "foreign law to enable the court to apply it in a particular case." *Sagaan Developments & Trading Ltd. v. Quail Cruises Ship Mgmt.*, No. 11-23873-CIV, 2013 WL 2250793, at *4 n. 10 (S.D. Fla. May 22, 2013). When a party "fail[s] to satisfy either burden the court will ordinarily apply the forum's law." *Id.* Because Mr. Kron failed to satisfy either burden here, this Court may assume that Florida law applies to the claims of all Class Members and need not consider any other jurisdiction's law. *Id.*

Even more fundamentally, as a matter of law, Mr. Kron is mistaken to rely on the *Hyundai* panel's decision, because it fails to account for the difference between the litigation and settlement contexts for class certification. According to the Supreme Court, "[s]ettlement is relevant to a class certification." *Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997). "Confronted with a request for settlement-only class certification," *Amchem* directs that a "district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620. Thus, in determining whether to certify a

3

nationwide settlement class, a district court need not determine whether the law of a single state will apply or whether the law of multiple states will apply to subclasses, because these are matters of manageability. Indeed, the Eleventh Circuit reached this precise conclusion in *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 765 (11th Cir. 2017), a case in which Mr. Kron's counsel, Mr. Field, represented an objector. In *Carter*, the Eleventh Circuit, relying on *Amchem*, held that the district court did not abuse its discretion in certifying a nationwide settlement class, because the settlement-only posture alleviated the need to inquire as to "intractable management problems." *Id.* at 765 (quoting *Amchem*, 521 U.S. at 620). Likewise, the Third Circuit, *en banc*, rejected Mr. Kron's argument and the *Hyundai* panel's position in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011), reasoning that "[b]ecause we are presented with a settlement class certification, we are not as concerned with formulating some prediction as to how [variances in state law] would play out at trial, for the proposal is that there be no trial," and concluding that "state law variations are largely irrelevant to certification of a settlement class." *Id.* at 304 (internal quotation marks omitted).

The *Hyundai* panel's decision—now deemed non-precedential by the Ninth Circuit and subject to *en banc* review—presents no obstacle to class certification here, because it is inapplicable to this case, which involves federal-question jurisdiction and a uniform breach-of-contract claim, and it is inconsistent with Eleventh Circuit law. As explained in Plaintiff's Motion for Final Approval, the Settlement Class easily satisfies the requirements of Rule 23 for certification. (ECF No. 93 at 17-19.)

B. **The Settlement's *Cy Pres* Provision Is Appropriate, Fair, And Reasonable.**

Mr. Kron also challenges the limited *cy pres* provision of the Settlement, claiming that the Court should order further distribution of the funds to the Class, the process of selecting a *cy pres* recipient should be public and overseen by the Court, and a recipient should be specified in the Settlement. (ECF No. 95 at 4-5.) This argument betrays the generic nature of Mr. Kron's objection, as it bears little relation to the actual *cy pres* provision in the Settlement, which addresses several of Mr. Kron's supposed concerns.

The Settlement utilizes *cy pres* as a last resort, and only conditionally in the event that Class Members fail to cash their Settlement checks within 180 days. (ECF No. 89-1, ¶ 23.) If payments to Class Members are made initially on a *pro rata* basis—i.e., if Class Members do not initially receive 100% of the Documentary or Dealer Fees that they incurred because the claims

submitted exceed the Settlement Value—any funds remaining from uncashed checks first must be distributed to Class Members who cashed their initial checks on a *pro rata* basis until they receive full payment for their claims. *Id.* A *cy pres* distribution is only permitted after all Class Members who have cashed their checks receive full payment for their claims or if making additional payments to such Class Members is "administratively infeasible." *Id.* This provision is consistent with the recommendations of the American Law Institute concerning *cy pres* distributions, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1355 (S.D. Fla. 2011) (citing American Law Inst., *Principles of the Law: Aggregate Litigation* §3.07, cmt. b (2010)), as well as Mr. Kron's request to "distribute the funds to the class before sending any money to a *cy pres* recipient" (ECF No. 95 at 5).

      Mr. Kron also faults the Settlement for not including a list of potential *cy pres* recipients. (ECF No. 95 at 5.) But because the *cy pres* provision only will be triggered if several contingent conditions are met, it would have been premature for the Settlement to identify potential recipients. *See Pines Nursing Home (77), Inc. v. PharMerica Corp.*, No. 1:13-CV-23924-KMM, 2015 WL 9269205, at *2 (S.D. Fla. Nov. 18, 2015) (granting final approval to class settlement with similar *cy pres* provision). "[N]o *cy pres* disbursement is imminent; and the fund . . . may well be depleted before *cy pres* kicks in." *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). If, at the conclusion of the Settlement, it is determined that funds will be distributed *cy pres*, such a decision will be presented to the Court (ECF No. 89-1, ¶ 23), permitting any interested Class Members to weigh in, as Mr. Kron requests. (ECF No. 95 at 5.) Nothing in Rule 23 requires any additional specification at this stage. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2017 WL 1086331, at *4 (N.D. Cal. Mar. 20, 2017) (rejecting the objection "that no *cy pres* beneficiary was specified" because it is not "required under the circumstances").

      Nor do the cases upon which Mr. Kron relies actually support his objection. All three cases involve the review of particular *cy pres* distributions, not the absence of a specified recipient in a Settlement. *See In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1067 (8th Cir. 2015) (vacating *cy pres* distribution because recipient was not "next best" recipient and additional distribution to class was feasible); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1037 (9th Cir. 2011) (vacating *cy* pres distribution because recipients "have anything to do with the objectives of the underlying statutes on which Plaintiffs base their claims"); *Six (6) Mexican*

5

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) (vacating *cy pres* distribution because recipient group was "far too remote from the plaintiff class"). In fact, the Ninth Circuit's decision in *Mexican Workers* actually undercuts Mr. Kron's objection, because it instructs the district court to choose a *cy pres* recipient "[a]fter the claims period has expired and the amount of the unclaimed fund is known," at which point the court "will be in a better position to determine what remedy will best effectuate the goals of" the plaintiffs. *Id.* at 1309. That is precisely what the Settlement here contemplates. Mr. Kron's objection to the *cy pres* provision of the Settlement should be overruled.

### C. The Settlement Is Free From Collusion.

Mr. Kron contends that the Court should "evaluate the settlement for any potential collusion between class counsel and defendant." (ECF No. 95 at 5.) To be sure, a court must find that "there was no fraud or collusion in arriving at the settlement" to grant final approval. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). But Mr. Kron never suggests, let alone presents any evidence, that any collusion occurred here, and for good reason: there was no collusion.

As Class Counsel attested in support of the Motion for Final Approval, the Settlement was the product of adversarial, arms-length negotiations, free from any collusion. (ECF No. 93-1, ¶¶ 20-22.) The sharply contested nature of the proceedings, as well as the involvement of an experienced mediator in settlement negotiations, further establish the absence of any fraud or collusion behind the Settlement. *See Barkwell v. Sprint Commc'ns Co., L.P.*, No. 4:09-CV-56 (CDL), 2014 WL 12704984, at *7 (M.D. Ga. Apr. 18, 2014) (concluding that there was no fraud or collusion because "[t]his case has been highly adversarial and zealously contested by [defendant] and its able counsel"); *In re: Checking Account Overdraft Litig.*, No. 1:09-M D-02836-JLK, 2014 WL 11370115, at *9 (S.D. Fla. Jan. 6, 2014) (finding no collusion because "[t]he Settlement was reached after more than three years of litigation before this Court and the Eleventh Circuit, and following formal mediation with a nationally recognized mediator"); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("[t]his was not a quick settlement, and there is no suggestion of collusion"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and

negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Even if Mr. Kron's mere request that the Court evaluate the settlement for any collusion were construed as some type of accusation, it must be rejected as "wholly unfounded" in the face of the undisputed evidence establishing that the Settlement "was the result of extensive arms-length negotiations moderated by a court-appointed mediator." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012). Indeed, the Eleventh Circuit rejected an identical argument advanced by Mr. Kron's counsel in *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 766 (11th Cir. 2017), concluding that his reliance on *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)—the same case cited in Mr. Kron's objection here—was misplaced because his "allegations of collusion are not supported by the record." *Carter*, 701 F. App'x at 766.

As established in Plaintiff's Motion for Final Approval, the Settlement should be approved as fair, reasonable, and adequate, and Mr. Kron's objection to the Settlement should be overruled.

**III.     THE OBJECTION TO CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE OVERRULED**

Class Counsel achieved an outstanding result for the Class in the face of significant risk and intense opposition from Ally during three years of hard-fought litigation. Class Counsel's fee and expense request of $2.95 million is commensurate with the substantail risk undertaken and result achieved and is entirely consistent with prevailing law in the Eleventh Circuit and this District. Nonetheless, Mr. Kron raises a boilerplate objection to it, completely ignoring Eleventh Circuit law. Mr. Kron's objection should be overruled.

**A. Class Counsel's Fee Request Is Reasonable And Adheres To Prevailing Law In This Circuit And District.**

Class Counsel's request for an award of fees and expenses of $2.95 million equates to approximately 15% of the Settlement value of $19,717,222. This request accords with—indeed, it falls well below—the guidelines set forth by the Eleventh Circuit. The well-established "benchmark" percentage for fee awards in the Eleventh Circuit is 25 percent. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (affirming fee award above the "25% benchmark"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (directing district courts "to view [the 20 percent to 30 percent] range as a 'benchmark,' which

'may be adjusted in accordance with the individual circumstances of each case'") (quoting in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) (observing that "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund")). Class Counsel's fee request, amounting to roughly 15 percent of the Settlement's value, falls squarely within this benchmark, particularly given the length and hard-fought nature of this litigation. *See Waters*, 190 F.3d at 1294 (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher based on the circumstances of the case); *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1203 (determining that "the 25% 'benchmark' should be considered a floor for a fee award in this case, and that the percentage should be adjusted upward" based on the circumstances of the case).

In accordance with the Eleventh Circuit's guidance, countless cases in this District confirm the reasonableness of Class Counsel's fee request here. *See, e.g., In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2017 WL 5290875, at *4 (S.D. Fla. Nov. 1, 2017) (awarding 30% of $131 million settlement); *Gevaerts v. TD Bank*, No. 1:14-CV-20744, 2015 WL 6751061, at *11 (S.D. Fla. Nov. 5, 2015) (awarding 30% of $20 million settlement); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011) (awarding 30% of $410 million settlement).

### B. Fees Should Be Awarded Based On The Full Value Of The Settlement.

Mr. Kron argues that Class Counsel's fee should be reduced to a percentage of the funds paid to Class Members, as opposed to the full value of the Settlement made available to the Class. The Eleventh Circuit, however, has definitively rejected this argument, holding that an attorney's fee award may be "based on a percentage of the total fund rather than the actual payments made to class members." *Waters*, 190 F.3d at 1295. The *Waters* court specifically rejected the notion Mr. Kron advocates here: that "a district court must consider only the actual payout in determining attorneys' fees." *Id*. It observed, instead, that "'class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.'" *Id*. at 1297 (quoting Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 14.03, at 14-14 (3d ed. 1992)). The court thus looked to what it termed "the *gross* settlement fund" as the point of reference for the percentage-of-the-fund calculation. *Id*. at 1297 (emphasis added).

The *Waters* court followed the rationale of the Supreme Court's adoption of the percentage-of-the-total fund approach in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980):

> The [Supreme] Court found that "to claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it*, is a benefit the fund created by the efforts of the class representatives and their counsel."

*Waters*, 190 F.3d at 1294 (quoting *Boeing*, 444 U.S. at 480) (emphasis added by *Waters*).

In accordance with *Waters*, numerous decisions from the Eleventh Circuit and this District have routinely rejected objections identical to Mr. Kron's and awarded class counsel fees based on the full value of settlements made available to class members. *See Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 767 (11th Cir. 2017) (affirming award based on full value of settlement made available to class and rejecting objection that "the attorney's fee should have been calculated based on the amount actually paid to the class" because "this is not required by our precedent"); *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474, 2016 WL 1529902, at *23 (S.D. Fla. Apr. 13, 2016) ("A better policy is that the valuation of counsel's fees should be based on the opportunity created for the Settlement Class—courts should give considerable weight to counsel's efforts to afford class members the opportunity to recover meaningful relief by availing themselves of a claims process that is procedurally fair. And counsel should not be penalized for class members' failure to take advantage of such a settlement."); *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (affirming fee award based on full value of settlement and rejecting objection based on "limiting the monetary value to the amount of Gillette's actual payments to the class"); *Hall v. Bank of Am., N.A.*, No. 12-CV-22700-FAM, 2014 WL 7184039, at *9 (S.D. Fla. Dec. 17, 2014) ("The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower.").

Not only is it the binding law of this Circuit that class counsel's fee should be based upon the value of the gross benefit made available to the class, but that law also furthers an important public policy: incentivizing counsel to take on large class actions on a contingency basis. As one court has observed, "the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."

9

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Basing attorneys' fees on the total value conferred on the class not only incentivizes class counsel to maximize the recovery for the class, but departing from that rule would weaken the deterrent value of class actions on a defendant's unlawful conduct. If the Court were to allow fees only on the claimed funds, it would confer no benefit on the Class, only a windfall on the Defendant. *See Waters*, 190 F.3d at 1298.

### C. A Lodestar Cross Check Should Be Rejected.

Mr. Kron finally argues that Class Counsel's fee request should be checked against their time records and lodestar. (ECF Nos. 95 at 6.) Courts in this District strongly disagree.

The Eleventh Circuit has squarely held that district courts should award fees in class actions using the percentage-of-the-fund method, and not the lodestar method. *Camden I,* 946 F.2d at 774. Our Circuit has never held that a district court abused its discretion by choosing not to employ a "lodestar crosscheck." As scholars have explained, the lodestar crosscheck can effectively cap the amount of compensation class counsel can receive from a settlement and thereby blunt their incentives to achieve the largest possible award for the class. *See* Myriam Gilles & Gary Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103, 140-45 (2006). As such, it can reintroduce the very same undesirable consequences of the lodestar method—to delay resolution of a case in order to build up lodestar figures—that the percentage-of-the-fund method was designed to correct in the first place. *See, e.g., Camden I*, 946 F.2d 768, 771-74 (citing the lodestar method's difficulty to administer and failure to align class counsel's interests with the class's interests). For this reason, courts in this District have expressly rejected objections calling for the use of a lodestar crosscheck. *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362–63 ("The lodestar approach should not be imposed through the back door via a 'cross-check.' Lodestar creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation.") (internal quotation marks omitted); *accord Wilson v. EverBank*, No. 14-cv-22264, 2016 WL 457011, at *19 (S.D. Fla. Feb. 3, 2016). Contrary to Mr. Kron's objection, it is neither necessary nor consistent with prevailing law to review Class Counsel's lodestar or time records to award fees from the Settlement.

Class Counsel's fee and expense request comports with the percentage-of-fund approach

applied in this Circuit and District. Mr. Kron's objection should be overruled.

### IV. THE OBJECTION LACKS CREDIBILITY.

While "meritorious objectors can be of immense help to a district court in evaluating the fairness of a settlement," courts have correspondingly cautioned that "it is also important for district courts to screen out improper objections because objectors can, by holding up a settlement for the rest of the class, essentially extort a settlement of even unmeritorious objections." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 n.3 (1st Cir. 2015) (citing *Newberg on Class Actions* § 13:21 (5th ed.)).

Mr. Kron and his counsel, Mr. Field, are frequent objectors who have made a cottage industry out of challenging class action settlements, not to benefit the class, but to leverage a fee. Court records show that Mr. Field has represented objectors in at least six class action settlements over the past three years, often raising the same generic arguments presented here, with each court rejecting the recycled arguments again and again.[2] Indeed, one court recently identified Mr. Field as a "serial professional objector[] to class settlements," a fact that "rais[es] serious concerns about the legitimacy of both [his] arguments and [his] motives." *In re Honest Mktg. Litig.,* No. 16-CV-01125, 2017 WL 8780329, at *2 (S.D.N.Y. Dec. 8, 2017) (internal quotation marks omitted). Likewise, Mr. Kron has raised unsuccessful objections to at least six class action settlements in the past several years.[3] A court also recently noted that Mr. Kron is "an apparent frequent objector to class action settlements." *In re Ford Motor Co. Spark Plug & Three Valve Engine Prod. Liab. Litig.*, No. 1:12-MD-2316, 2016 WL 6909078, at *5 (N.D. Ohio Jan. 26,

---

[2] *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 602 (9th Cir. 2018); Objection to Class Settlement, *In re Takata Airbag Prod. Liab. Litig.*, No. 15-cv-2599 (Sep. 25, 2017) (ECF No. 2077); *In re Honest Mktg. Litig.*, No. 16-CV-01125, 2017 WL 8780329, at *2 (S.D.N.Y. Dec. 8, 2017); *Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 761 (11th Cir. 2017); Order & Judgment, *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-0373 (S.D.N.Y. Nov. 1, 2017) (ECF No. No. 132 at 6); *Marty v. Anheuser-Busch Companies, LLC*, No. 13-CV-23656-JJO, 2015 WL 6391185, at *1 (S.D. Fla. Oct. 22, 2015).

[3] *See* Objection, *Lee v. Global Tel*Link Corp.*, No. 15-cv-02495 (C.D. Cal. June 15, 2018) (ECF No. 191); Objection, *Farrell v. Bank of America, N.A.*, No. 16-cv-00492 (S.D. Cal. 2018) (ECF No. 84); *In re Ford Motor Co. Spark Plug & Three Valve Engine Prod. Liab. Litig.*, No. 1:12-MD-2316, 2016 WL 6909078, at *5 (N.D. Ohio Jan. 26, 2016); *Mount v. Wells Fargo Bank, N.A.*, No. B260585, 2016 WL 537604, at *1 (Cal. Ct. App. Feb. 10, 2016); Objection, *Connor v. JP Morgan Chase Bank*, No. 10-cv-1284 (S.D. Cal. 2015) (ECF No. 155); Objection, *In re Capital One Telephone Consumer Protection Act Litig.,* No. 12-cv-10064 (N.D. Ill. Oct. 31, 2014) (ECF No. 226).

2016).

Serial objectors like Mr. Kron and Mr. Field—who employ objections, followed by meritless appeals, to merely obtain a payoff—interfere with the system and "often delay and unnecessarily complicate class proceedings." *Newberg on Class Actions* § 15:37. The Federal Judicial Center therefore advises courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009); *see also In re Elec. Books Antitrust Litig.*, 639 F. App'x 724, 728 (2d Cir. 2016) ("[P]rofessional objectors are lawyers who file stock objections to class action settlements—objections that are [m]ost often . . . nonmeritorious—and then are rewarded with a fee by class counsel to settle their objections."); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1362 (recognizing that professional objectors' "sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto" rather than "a concern for the welfare of the Settlement Class").

At a minimum, given this track record of serial objections, the Court should view the positions advanced in Mr. Kron's objection with skepticism.

### V. CONCLUSION

For the foregoing reasons, Mr. Kron's objection to final approval of the Settlement and Class Counsel's fee application should be overruled.

13

Dated: September 21, 2018  Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Matthew P. Weinshall*
Peter Prieto (FBN 501492)
John Gravante (FBN 617113)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
Email: pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com

**BARON & BUDD, P.C.**
Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Jonas P. Mann (SBN 263314)
jmann@baronbudd.com
15910 Ventura Boulevard,
Suite 1600
Encino, California  91436
Telephone:  (818)839-2333
Facsimile:  (818)986-9698

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on September 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Matthew P. Weinshall*
       Matthew P. Weinshall